UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFREY JOHNSON, | Civ. No. 20-20358 (MAS)(JBD) |
| Plaintiff, | MEMORANDUM ORDER |
| v. | |
| KYLE FEIGLEY, *et al.*, | |
| Defendants. | |

This matter comes before the Court by way of two motions filed by *pro se* plaintiff Jeffrey Johnson for the appointment of *pro bono* counsel pursuant to 28 U.S.C. § 1915(e)(1).  [Dkts. 27, 35.]  For the reasons set forth below, Johnson's motions are denied without prejudice.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

On December 28, 2020, Johnson, who is currently incarcerated at the Mercer County Correction Center, filed a complaint, along with an application to proceed *in forma pauperis*, against defendants Kyle Feigley, Anthony Zoppina, Chris Talar, Brian Hawkings, Veronica Allende, Juanita Cherry, Eric Daab, and Katherine Morris.  Johnson alleged that defendants violated his constitutional rights, and asserted claims under 42 U.S.C. § 1983.  [Dkt. 1.]  Johnson's claims stemmed from alleged events that occurred between January 2019 and August 2019 that led to his August 1, 2019 arrest and subsequent indictment on various criminal charges.  *Id.* at 5, 7-11; [Dkt. 30-5] at 3-5, 7; [Dkt 30-6].  Those criminal charges were brought

1

and prosecuted against Johnson and two co-defendants in the Superior Court of New Jersey, Mercer County (the "state criminal matter").[1]

This Court granted Johnson's application to proceed *in forma pauperis* on August 30, 2021 [Dkt. 12], and he filed an amended complaint on September 22, 2021 adding as defendants James Sansone, Glenn Sefick, Blair Astbury, Lisa King, Thomas Ryan, Jayson Astbury, Katherine Cox, Erik Mancheno, and T. Gibson. [Dkt. 15.]

On June 13, 2023, after screening the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court construed and permitted the following claims to proceed: (i) illegal search and seizure, in violation of the Fourth Amendment, against defendants Daab, Feigley, Zoppina, Talar, Hawkings, Sansone, Sefick, Blair Astbury, Jayson Astbury, King, Ryan, Cox, Mancheno, and Gibson; and (ii) false imprisonment against defendant Cherry, finding "no basis for . . . dismissal" of those two claims "at this time." [Dkt. 18] at 3. The Court dismissed Johnson's remaining claims without prejudice. *Id.* at 3-4.

On September 6, 2023, Johnson filed a request for a Clerk's entry of default against "defendants," as well as a motion to appoint *pro bono* counsel. [Dkts. 26, 27.] On September 12, 2023, the Clerk granted Johnson's request for entry of

---

[1] The Court takes judicial notice of the court filings in the state criminal matter. *See Roche v. Aetna, Inc.*, Civ. No. 22-607 (NLH), 2023 WL 3173394, at *3 (D.N.J. May 1, 2023) (stating that "state court filings are matters of public record, and as such this Court may take judicial notice of them"); Fed. R. Evid. 201(d) (providing that "[t]he court may take judicial notice at any stage of the proceeding").

default, but only as to defendants Hawkings, Jayson Astbury, Cox, and Mancheno.[2] On September 19, 2023, Johnson filed a motion for default judgment against those defendants. [Dkt. 28.]

On October 30, 2023, the New Jersey Office of the Attorney General ("OAG") entered an appearance on behalf of defendant Daab and filed a motion to stay the proceedings pending the completion of the state criminal matter against Johnson. [Dkts. 29, 30.] The OAG indicated that it also anticipated representing defendants Cherry, Feigley, Zoppina, Talar, Sansone, Sefick, King, Blair Astbury, and Ryan "as their requests for representation are processed in accordance with the relevant provisions of the New Jersey Tort Claims Act, N.J.[S.A.] §§ 59:10A-1 to -6." [Dkt. 30-1] at 1, 6. In the alternative, the OAG asked that if the stay were not granted, that those defendants be granted a sixty-day extension to respond to the amended complaint. *Id.* at 6.

On November 29, 2023, Johnson filed a request for a Clerk's entry of default against defendants Feigley, Zoppina, Talar, Sansone, Sefick, King, Blair Astbury, Ryan, and Cherry, [Dkt. 33], which the Clerk granted on December 6, 2023. On December 18, 2023, the OAG filed a request that the Court vacate default as to those defendants, who are all state law enforcement personnel allegedly involved in the underlying pending state criminal matter, since the OAG still anticipated

---

[2]  On September 12, 2023, the Clerk noted that default could not be entered against defendant T. Gibson, as the summons for him had been returned unexecuted, or defendants Daab, Feigley, Zoppina, Talar, Sansone, Sefick, King, Blair Astbury, Ryan, or Cherry, because they had requested and received an extension of time to respond to the amended complaint.

3

entering appearances on behalf of those defendants but (at that time) continued to wait until conflict checks had been conducted and cleared. [Dkt. 34] at 1-2. Johnson then filed his second motion to appoint *pro bono* counsel on December 27, 2023. [Dkt. 35.]

In January 2024, after the Court learned that sentence had been imposed and a judgment had been entered against Johnson in the state criminal matter, the Court directed the OAG to file a status letter indicating (i) how, if at all, the entry of judgment against Johnson affected the OAG's pending motion to stay in this case, [Dkt. 30]; (ii) whether, in light of the entry of judgment against Johnson in the state criminal matter, the OAG was able to respond to Johnson's amended complaint on the merits; and (iii) the status of its representation of defendants Feigley, Zoppina, Talar, Sansone, Sefick, King, Blair Astbury, Ryan, and Cherry. [Dkt. 36.]

On January 16, 2024, the OAG entered an appearance on behalf of defendants Feigley, Zoppina, Talar, Sansone, Sefick, King, Blair Astbury, Ryan, Cherry, and T. Gibson. [Dkt. 37.] The same day, the OAG filed a status letter in response to the Court's order; the letter indicated that in light of Johnson's judgment and sentence, the OAG believed that Johnson's claims were now barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). [Dkt. 38] at 2-4. Accordingly, the OAG asked the Court (i) to vacate the entry of default against defendants Blair Astbury, Cherry, Feigley, King, Ryan, Sansone, Sefick, Talar, and Zoppina; (ii) to permit defendants to file a motion to dismiss on the grounds set forth in the letter; and (iii) to otherwise stay the proceedings. *Id.* at 4.

4

In response to the OAG's letter, the Court ordered that the entry of default be vacated against defendants Feigley, Zoppina, Talar, Sansone, Sefick, King, Blair Astbury, Ryan, and Cherry; granted the OAG leave to file a motion to dismiss; and denied the motion to stay as moot. [Dkt. 40] at 2. The Court also ordered that discovery be held in abeyance pending a decision on the forthcoming motion to dismiss. *Id.* at 3.

On February 16, 2024, Johnson filed a second motion for default judgment. [Dkt. 41.] In his motion, Johnson asked the Court to grant relief in the amount requested or whatever the Court believed was fair, asserting that he "provided evidence to support all [his] claims," such as a "fake search warrant for [a] fake stash house"; asserting that defendants had "fabricated controlled buys in [a search warrant] affidavit"; and asserting that "parole sent plaintiff herein to prison for a year because the state fabricated a [.]25 caliber [S]pesco hand gun in [the] complaint warrant" and the state's "false testimony alleging plaintiff['s] herein possession of the fabricated [.]25 caliber [S]pesco handgun." *Id.* at 1.

On February 21, 2024, the Court denied Johnson's first motion for default judgment [Dkt. 28] without prejudice for failure to include a moving brief that addressed the necessary requirements for the Court's consideration. [Dkt. 43.] On March 4, 2024, the OAG filed a motion to dismiss Johnson's amended complaint on behalf of Defendants Blair Astbury, Cherry, Daab, Feigley, T. Gibson, King, Ryan, Sansone, Sefick, Talar, and Zoppina. [Dkt. 45.] That motion presently is

5

being briefed. On March 5, 2024 the Court denied Johnson's second motion for default judgment for the same reason that the Court denied his first. [Dkt. 47.]

## II.    DISCUSSION

Although there is no constitutional right to counsel for litigants in a civil matter, 28 U.S.C. § 1915(e)(1) provides the Court with the discretion to "request an attorney to represent any person unable to afford counsel." *See Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997) (citations omitted). However, "[b]efore the court is justified in exercising its discretion in favor of appointment, it must first appear that the claim has some merit in fact and law." *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (citations omitted). Where the Court has determined, as a threshold matter, "that the plaintiff's claim has arguable merit in fact and law," the Court then must consider six additional factors (the "*Tabron* factors") to determine whether a matter warrants the appointment of *pro bono* counsel. *Id.*; *see also Parham*, 126 F.3d at 457. The *Tabron* factors are: (1) the ability of the plaintiff "to present his or her case," and, where the plaintiff is a prisoner, the "restraints placed upon him or her by confinement"; (2) the difficulty and complexity of the legal issues in the matter; (3) the amount of factual investigation required and the plaintiff's ability to pursue that factual investigation, and whether the claims will require extensive discovery and compliance with complex discovery rules; (4) whether the issues will rely heavily on testimony and thus turn on credibility determinations; (5) whether expert witness testimony will be required; and

(6) whether the plaintiff can attain and afford to retain counsel. *Tabron*, 6 F.3d at 156; *Parham*, 126 F.3d at 457.

The Court must weigh these factors against the extreme value of a *pro bono* lawyer's time, remaining mindful that "[v]olunteer lawyer time is a precious commodity . . . . Because this resource is available in only limited quantity, every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause. We cannot afford that waste." *Tabron*, 6 F.3d at 157 (second alteration in original) (quoting *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989)). Thus, "appointment of counsel remains a matter of discretion . . . and the determination must be made on a case-by-case basis." *Id.* at 157-58.

As a threshold matter, the Court repeats that in the time since the Court's initial screening of Johnson's complaint, Johnson has been sentenced in the state criminal matter and judgment has been entered against him. This development casts at least some doubt on the merits of Johnson's claims in this matter, generally which concern the underlying criminal prosecution in that case. But the Court will not decide that issue here, leaving that analysis to the pending motion to dismiss. The Court instead proceeds directly to apply the six *Tabron* factors. *See Markferding v. Markferding*, Civ. No. 21-13368 (MCA), 2021 WL 5711591, at *1 (D.N.J. Dec. 1, 2021); *Nadal v. Christie*, Civ. No. 13-5447 (RBK), 2013 WL 6331058, at *2-3 (D.N.J. Dec. 4, 2013); *Clayton v. Clement*, Civ. No. 06-5426 (RMB), 2007 WL 1741758, at *2 (D.N.J. June 14, 2007).

The first *Tabron* factor—the plaintiff's ability to present his own case—requires the Court to "consider the plaintiff's education, literacy, prior work experience, and prior litigation experience," as well as whether the plaintiff is able to understand English. *Tabron*, 6 F.3d at 156. Here, as evidenced by his filings, Johnson appears to be able to read, write, understand English, and to understand the legal process. Johnson has been able to file a complaint [Dkt. 1], an amended complaint [Dkt. 15], two requests for a Clerk's entry of default [Dkts. 26, 33], and two motions for default judgment [Dkts. 28, 41], all without counsel. Johnson has also filed six letters to the Court, some of which include detailed and lengthy statements and allegations and attach documents that Johnson has gathered in support of his claims, such as the complaint warrants, search warrants, and other documents related to the state criminal matter. *See* [Dkts. 6, 10, 11, 13, 14, 16.] Overall, these filings indicate, at least at this stage, that Johnson is competent, literate, and able to present his case. *See Burt v. Hicks*, Civ. No. 20-19459 (NLH), 2021 WL 3207729, at *3 (D.N.J. July 29, 2021).

Where, as here, the plaintiff is incarcerated, the Court should also consider the restraints placed on him by his imprisonment, as well as whether the plaintiff has access to necessary resources like a typewriter, photocopier, telephone, and computer. *Id.* at *2 (citing *Montgomery v. Pinchak*, 294 F.3d 492, 498 (2002); *Parham*, 126 F.3d at 459). Johnson asserts that he "has limited access to the law library and limited knowledge of the law," [Dkt. 27] at 1, that the Mercer County Correction Center does not have any law books (only computer access), and that the

8

copy machine has been broken for over three years. [Dkt. 35] at 1.  Johnson also asserts that a teacher working in the Mercer County Correction Center "refused to print out a default motion" and "refused to print out a motion to appoint counsel" for Johnson on November 22, 2023, as well as a news article. *Id.*  However, this does not appear to have impacted Johnson's ability to move forward with his case, as evidenced by his subsequent filing of the November 29, 2023 request for a Clerk's entry of default [Dkt. 33], his December 27, 2023 motion for *pro bono* counsel [Dkt. 35], and his February 16, 2024 motion for default judgment [Dkt. 41].  Thus, the Court does not find that Johnson's ability to present his case has been impeded because he is incarcerated. *See Lockett v. Derose*, Civ. No. 08-1643 (ARC), 2009 WL 1917071, at *1 (M.D. Pa. July 1, 2009) (stating in response to the plaintiff's arguments that his *pro se* status or imprisonment itself would hamper his ability to litigate, that the plaintiff "simply stands in the same position as every other *pro se* prison litigator," and that "[t]o hold incarceration, itself, to be a basis to appoint counsel would essentially dispose of the need to examine the individual factors of each inmate's case under *Tabron*").  This factor thus weighs against appointing Johnson counsel.

      The second *Tabron* factor requires the Court to consider "the difficulty of the particular legal issues," especially where the law is not clear. *Tabron*, 6 F.3d at 156.  Here, Johnson's claims primarily turn on allegations that defendant Feigley's affidavit and search warrants, as well as the judge's signatures on them, were "fake," that parts of the investigation that led to Johnson's arrest were conducted

9

"with no warrant," and that various defendants provided "false information." *See* [Dkt. 15] at 6-12, 14-17. Although Johnson asserts that the "issues involved in this case are complex and will [r]equire significant research and investigation," [Dkt. 27] at 1, he offers nothing more in support of this conclusory statement, and it is too early in the litigation to determine whether the issues are indeed complex. Thus, this factor weighs against the appointment of *pro bono* counsel at this time. *See Jenkins v. D'Amico*, Civ. No. 06-2027 (JAP), 2006 WL 2465414, at *1-2 (D.N.J. Aug. 22, 2006) (noting, where the plaintiffs' complaint was recently filed, that "the factual and legal issues 'have not been tested or developed by the general course of litigation, making [a number of factors] . . . particularly difficult to evaluate,'" and determining that the plaintiffs had not demonstrated the complexity of legal issues, or most of the other *Tabron* factors, at that early stage of the proceedings) (first alteration in original) (quoting *Chatterjee v. Philadelphia Federation of Teachers*, 2000 WL 1022979, at *1 (E.D. Pa. July 18, 2000)).

"As to the third *Tabron* factor, the Third Circuit has stated that where a person is confined to prison and that confinement limits his ability to conduct discovery, great weight will be given to the decision to appoint counsel." *Nadal*, 2013 WL 6331058, at *3 (citing *Montgomery*, 294 F.3d at 503; *Tabron*, 6 F.3d at 156). Here, Johnson argues that he requires *pro bono* counsel because his imprisonment will "greatly limit his ability to litigate." [Dkt. 27] at 1. However, because this matter is still at the pleading stage and discovery has not yet begun, it is too early to know whether Johnson's incarceration will impact his ability to

10

conduct discovery. *See Nadal*, 2013 WL 6331058, at *3 (stating, where the matter had not progressed to discovery and there was a pending motion to dismiss, that "[e]ven if [p]laintiff must engage in discovery, unless and until he is faced with issues that impede his ability to do so, he cannot show that this factor weighs in favor of requesting *pro bono* counsel"). Accordingly, this factor does not weigh in favor of appointing counsel at this time.

Likewise, it is too early in the proceedings to determine the fourth *Tabron* factor, which "will only weigh in favor of the appointment of counsel where the trial is expected to be 'solely a swearing contest.'" *Burt*, 2021 WL 3207729, at *4 (quoting *Montgomery*, 294 F.3d at 505). Johnson asserts that "[a] trial in this case will likely involve conflicting testimony, and counsel would better enable plaintiff to present evidence and cross examine witnesses," [Dkt. 27] at 1, but at this early stage his argument is speculation. *See Burt*, 2021 WL 3207729, at *4 (determining the fourth factor to be neutral because the court could not answer whether the case would turn on credibility at that time). This factor does not weigh in favor of appointing counsel at this time.

Neither does Johnson assert, nor can the Court determine, that expert witness testimony will be required, rendering the fifth *Tabron* factor neutral as well.

Finally, as for the sixth *Tabron* factor, whether the plaintiff can attain and afford to retain counsel, Johnson asserts he has "made repeated efforts to obtain a lawyer." [Dkt. 27] at 1. Johnson attached a letter from one such attorney in

11

support of this assertion, dated October 20, 2021, in which the attorney stated that he did not want to take Johnson's case "without more information." *Id.* at 2. However, there is no indication that Johnson ever responded to that attorney providing the requested information, or that Johnson sought to obtain other counsel. That said, the fact that Johnson is proceeding *in forma pauperis* does indicate he may not be able to afford a lawyer. Thus, this factor weighs slightly in favor of appointing *pro bono* counsel.

Balancing the *Tabron* factors together, there is only one factor that weighs (slightly) in favor of appointing *pro bono* counsel at this time, and the others either weigh against appointing counsel or are neutral. On the whole, the factors do not warrant appointing counsel at this time. The Court will therefore deny Johnson's present motions for the appointment of *pro bono* counsel without prejudice. The Court notes that *pro bono* counsel may be appointed at any stage of the litigation. *Tabron*, 6 F.3d at 156. Should any of Johnson's claims remain intact after the Court decides the OAG's motion to dismiss, Johnson may file another motion for the appointment of *pro bono* counsel, explaining with specificity why the *Tabron* factors weigh in favor of appointing *pro bono* counsel.

## III. CONCLUSION

For the foregoing reasons,

**IT IS** on this 8th day of March, 2024,

**ORDERED** that Johnson's motions for the appointment of *pro bono* counsel [Dkts. 27, 35] are DENIED without prejudice and may be refiled if any of his claims remain after the Court decides the pending motion to dismiss [Dkt. 45]; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Order on Johnson by regular U.S. mail.

_____
J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE